IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| North Star Mutual Insurance, ) | |
| ) | |
| Plaintiff, ) | **ORDER ON CROSS MOTIONS** |
| ) | **FOR SUMMARY JUDGMENT** |
| vs. ) | |
| ) | |
| Daryn Fryer, Kevin Stastny, Kim ) | Case No.1:22-cv-051 |
| Westerness, Joshua Scott, Kraft LLC, ) | |
| Nutrien Ag Solutions, Kory Lowen, ) | |
| Parker Weisenbeck, and Jerry and ) | |
| Candice Keller, ) | |
| ) | |
| Defendants. ) | |

Before the Court are cross motions for summary judgment filed by Defendant Daryn Fryer and the Plaintiff North Star Mutual Insurance on December 5, 2023. See Doc. Nos. 45 and 49. The motions have been fully briefed and are ripe for consideration. See Doc. Nos. 46, 50, 57, and 59. For the reasons set forth below, the Defendant's motion is granted and the Plaintiff's motion is denied.

I.  **BACKGROUND**

North Star Mutual Insurance ("North Star") is a Minnesota insurance company with its principal place of business in Cottonwood, Minnesota. Defendant Daryn Fryer lives in Bismarck, North Dakota. North Star issued a homeowner's insurance policy to Fryer after he submitted an application on October 8, 2013, through his insurance agent, Bob Hackman.

Hackman typically completes the application, which includes a homeowners underwriting report ("underwriting report"), based on information his client provides to him. Question number 10 of the underwriting report states, "List any unusual hazards: (examples: Dogs, Swimming Pools, Diving Boards, Slides, Horses, Trampolines)." See Doc. No. 1-1, p. 2. In response,

1

Hackman wrote, "NONE" on Fryer's application. Id. Hackman's general procedure is to discuss each application question with his client and specifically ask his client each question. However, Hackman is unsure whether he asked Fryer the question regarding unusual hazards when the application was completed in 2013. Hackman does not give any explanation to clients as to the meaning of "unusual hazards." Hackman did not ask Fryer questions regarding use or storage of fireworks at the time of the initial application or any time thereafter.

Fryer's homeowner policy was renewed for several subsequent years following the issuance, each time on the policy anniversary date of September 27th. After the policy was issued in 2013, North Star did not send Fryer any forms to complete or ask Fryer any questions regarding changes to risks, including unusual hazards. In 2018, North Star sent Hackman a renewal application, which was similar to the application Hackman completed on Fryer's behalf in 2013. Hackman did not return the questionnaire to North Star. On September 27, 2020, North Star renewed Fryer's policy to September 27, 2021. On June 24, 2021, North Star nonrenewed Fryer's homeowner's policy because he submitted two non-weather claims. After the nonrenewal, the policy remained in effect until September 27, 2021.

On October 9, 2020, the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives, ("the ATF") issued Fryer a permit to purchase, store, transport, and use commercial fireworks (also referred to as "display fireworks".) Fryer subsequently placed a magazine for the storage of fireworks on his property and began storing both commercial fireworks and consumer fireworks in the magazine. Fryer did not inform North Star about his storage or use of fireworks.

On September 10, 2021, Fryer obtained permission from Nutrient Ag Solutions to have a firework show the following day, Labor Day, on Nutrient Ag Solutions' property. Fryer invited other individuals to watch the show. On September 11, 2021, volunteers helped Fryer set up the

show. Prior to set-up, Fryer instructed the volunteers on how to properly handle and set up the fireworks. While setting up the fireworks, a mortar shell firework exploded causing the bodily injuries and property damage alleged in the compliant. Defendant Kevin Stastny, an agent for Nutrient Ag Solutions, suffered severe personal injuries. The explosion also caused significant bodily injuries and property damage to other defendants. After the explosion, Fryer informed North Star of the incident and sought coverage for personal liability and property claims.

On March 28, 2022, North Star initiated this declaratory judgment action. See Doc. No. 1. North Star seeks a declaration that the policy does not provide coverage to Fryer for the September 11, 2021, fireworks incident. Fryer and North Star both filed motions for summary judgment on December 5, 2023. See Doc. Nos. 45 and 49. North Star and Fryer filed a stipulation to supplemental undisputed facts regarding the cross motions for summary judgment on May 29, 2024. See Doc. No. 61. The stipulation notifies the Court of a complaint by W.R. Berkley Corporation against Fryer, which includes a claim arising out of the September 11, 2021, incident. The other defendants did not join in Fryer's motion or file their own motions for summary judgment. The cross motions for summary judgment have been fully briefed and are ripe for disposition.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, indicates no genuine issues of material fact exist and that the moving party is entitled to judgment as a matter of law. Davison v. City of Minneapolis, Minn., 490 F.3d 648, 654 (8th Cir. 2007); see Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. Id. The purpose of summary judgment is to assess the evidence and determine if a trial is genuinely necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The court must inquire whether the evidence presents a sufficient disagreement to require the submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. Diesel Mach., Inc. v. B.R. Lee Indus., Inc., 418 F.3d 820, 832 (8th Cir. 2005). The moving party bears the responsibility of informing the court of the basis for the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011). The non-moving party may not rely merely on allegations or denials in its own pleading; rather, its response must set out specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(c)(1). The court must consider the substantive standard of proof when ruling on a motion for summary judgment. Anderson, 477 U.S. at 252. If the record taken as a whole and viewed in a light most favorable to the non-moving party could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and summary judgment is appropriate. Matsushita, 475 U.S. at 587.

### III.   LEGAL DISCUSSION

Under North Dakota law, exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer. Grinnell Mut. Reinsurance Co. v. Ctr. Mut. Ins. Co., 2003 ND 50, ¶ 10, 658 N.W.2d 363. The goal when interpreting insurance policies is "to give effect to the mutual intention of the parties as it existed at the time of contracting." Farmers Union Mut. Ins. Co. v. Decker, 2005 ND 173, ¶ 4, 704 N.W.2d 857 (citations omitted).

In summarizing the standard for construing an insurance policy, the North Dakota Supreme Court stated,

> If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured.

Id.

North Star argues Fryer's misrepresentation and/or concealment of commercial fireworks excludes him from coverage under the policy. Specifically, North Star argues Fryer's failure to disclose the use and storage of fireworks constitutes an omission that amounts to misrepresentation. The misrepresentation provision is the only policy provision that North Star argues bars coverage for the personal liability and property damage claims arising out of the September 11, 2021, incident. North Star does not dispute that the policy does not exclude, limit, or restrict coverage based on the use or storage of fireworks. The misrepresentation provision of the policy provides:

> **Misrepresentation, Concealment, Or Fraud –** "We" do not provide coverage for any "insured" if, before or after a loss:
>
> a. an "insured" has willfully concealed or misrepresented a material fact or circumstance that relates to this insurance or the subject thereof; or
> b. there has been fraudulent or false swearing by an "insured" with regard to a matter that relates to this insurance or the subject thereof.
>
> This applies even with respect to an "insured" who was not involved in the concealment, misrepresentation, fraudulent conduct, or false swearing.

See Doc. No. 1-2, p. 32.

North Star argues Fryer's failure to notify it of the commercial fireworks constitutes a concealment under the policy. Fryer argues that any failure to notify North Star of commercial

fireworks was not willful because North Star didn't ask about his use of commercial fireworks and he did not think to inform it of the fireworks. North Star contends Fryer should have thought to inform it of the increased risk caused by the fireworks. However, Fryer had no obligation under the policy to inform North Star of the fireworks. Absent any obligation of disclosure, Fryer did not *willfully* conceal any material fact that would bar coverage for property damage and bodily injury by failing to notify North Star of the fireworks.

In providing a definition of concealment, North Star cites to *New York Life Ins. Co. v. Fleck*, which states, "neglect to communicate that which a party knows and ought to communicate is called a concealment." 73 N.D. 143, 149, 12 N.W.2d 530 (1944). The material misrepresentation made by the insured in *New York Life* was made in response to questions in an insurance policy application. *New York Life* is distinguishable from the present case, where North Star did not ask Fryer about unusual hazards after he obtained the fireworks. It is undisputed that Fryer never made a false statement to North Star regarding the fireworks.

Under the terms of the policy, a concealment bars coverage only when willful. The policy does not define "willful." North Star does not suggest any definition for the Court to apply. Fryer contends willful conduct requires intentional conduct in that the person was aware of what they were doing. See Cheetah Properties 1, LLC v. Panther Pressure Testers, Inc., 2016 ND 102, 879 N.W.2d 423 (finding the term willful in civil contexts generally implies the person's conduct was intentional and not inadvertent.) The Court finds that the plain, ordinary meaning of the term willful means conduct engaged in intentionally and not inadvertently.

North Star argues the policy bars coverage of Fryer's claim even if his concealment was unintentional, citing to Section 26.1-29-15 of the North Dakota Century Code. Section 26.1-29-15 provides, "[a] concealment, whether intentional or unintentional, entitles the injured party to

rescind an insurance contract." This section is inapplicable to Fryer's policy because the policy unequivocally requires a concealment to be willful to bar coverage. Further, Section 26.1-29-15 applies to an insurer's right to rescind a contract. Here, North Star seeks to bar coverage under the terms of the contract, rather than rescind the contract. Accordingly, only an intentional concealment bars coverage of Fryer's policy. North Star does not provide any evidence that Fryer's alleged concealment was intentional.

North Star does not point to any policy provision that requires Fryer to inform it about any changes to unusual hazards after the issuance of the policy. In support of its contention that Fryer's failure to disclose fireworks in 2021 amounts to concealment, North Star only cites to the question from the 2013 underwriting report about unusual hazards. It is undisputed that North Star did not ask Fryer to complete any forms or ask Fryer about any activities, risks, or unusual hazards after issuing the policy in 2013. There is no evidence that Fryer was informed that fireworks constitute an unusual hazard. Fireworks were not included in the examples of unusual hazards in the underwriting report that was completed by Hackman in 2013. North Star did not ask Fryer about the use of fireworks at the time of the initial application or the subsequent renewals.

Sheila Brockman, North Star's manager of personal lines underwriting, testified that the only way North Star would have known about the fireworks was 1) if Fryer would have realized North Star considers commercial fireworks an unusual hazard, and 2) if Fryer would have realized he needed to make North Star aware of the fireworks. See Doc. No. 48-5, p. 12. Fryer testified that he did not intentionally conceal the fireworks. See Doc. No. 48-2, p. 60. He did not think to notify North Star. Id. North Star does not explain how Fryer would have known the fireworks were an unusual hazard or how Fryer would have known he had a duty to notify North Star of changes to unusual hazards on the premises. North Star simply contends Fryer should have known. North Star

7

is a sophisticated party with expertise in the insurance industry. It could have taken steps to protect its interest but failed to do so. North Star could have included a policy provision requiring Fryer to disclose any changes to risks, including unusual hazards, after the issuance of the policy. Also, North Star could have sent a questionnaire asking about changes in circumstances prior to renewal of the policy every year. Without any such action by North Star, Fryer did not have a duty to notify Fryer of the fireworks and could not have known about North Star's expectation to do so.

North Star argues Fryer should have thought to inform it about the magazine placed on his property. According to North Star, it would have learned about the storage and use of fireworks if Fryer informed it of the magazine. In support of this attenuated argument, North Star states that Hackman told Fryer to inform him of any improvements or updates to the property. First, this is a misstatement of Hackman's testimony. Hackman testified that he *generally* informs clients to notify him about improvements but does not specifically recall whether he informed Fryer. See Doc. No. 48-4, p. 7. Second, Hackman telling Fryer to notify him of updates to the property is not an adequate substitute for a policy provision obligating Fryer to inform North Star of any newly obtained unusual hazards.

Fryer did not have an obligation under the policy to notify North Star about the use and storage of commercial fireworks. In the absence of a definition of unusual hazard, questions about unusual hazards at the time of renewal, and a policy provision requiring disclosure of changes to unusual hazards occurring after the issuance of the policy, any alleged concealment by Fryer was not willful because he could not have determined what, if any, duty he had to disclose fireworks as an unusual hazard eight years after the issuance of the policy. Accordingly, the Court concludes Fryer did not willfully conceal or willfully misrepresent any material facts regarding his use and storage of commercial fireworks. The misrepresentation provision of the policy does not bar

coverage of the bodily injury and personal property claims arising out of the September 11, 2021, fireworks incident. Therefore, the Plaintiff's motion for summary judgment is denied and Defendant Fryer's motion for summary judgment is granted.

## IV.     CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and relevant case law. For the reasons set forth above, the Defendant's motion summary judgment (Doc. No. 45) is **GRANTED** and the Plaintiff's motion for summary judgment (Doc. No. 49) is **DENIED**. The motions for hearing (Doc. Nos. 52 and 53) are **DENIED**.

**IT IS SO ORDERED.**

Dated this 24th day of July, 2024.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court